**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALANA SOUZA a/k/a ALANA CAMPOS, CIELO JEAN GIBSON a/k/a CJ GIBSON, DESSIE MITCHESON, EMILY SEARS, EVA PEPAJ, HEATHER RAE YOUNG, HILLARY FISHER VINSON a/k/a HILLARY HEPNER, JESSICA GOLDEN a/k/a JESSE GOLDEN, LUCY PINDER, MARIANA DAVALOS, MARKETA KAZDOVA, PAOLA CANAS, TIFFANY SELBY, RHIAN SUGDEN, and TIFFANY TOTH GRAY, | Case No. 19-cv-683-RJC-CRE |
| Plaintiffs, | |
| - against - | **FIRST AMENDED COMPLAINT** |
| BRASS SADDLE, INC. d/b/a THE FILLY CORRAL, OLI-CAR, INC. d/b/a THE FILLY CORRAL, and BETTY ANN BISACCA, | |
| Defendants. | |

Plaintiffs ALANA SOUZA A/K/A ALANA CAMPOS, CIELO JEAN GIBSON a/k/a CJ GIBSON, DESSIE MITCHESON, EMILY SEARS, EVA PEPAJ, HEATHER RAE YOUNG, HILLARY FISHER VINSON A/K/A HILLARY HEPNER, JESSICA GOLDEN A/K/A JESSE GOLDEN, LUCY PINDER, MARIANA DAVALOS, MARKETA KAZDOVA, PAOLA CANAS, TIFFANY SELBY, RHIAN SUGDEN, and TIFFANY TOTH GRAY (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants BRASS SADDLE, INC. d/b/a THE FILLY CORRAL, OLI-CAR, INC. d/b/a THE FILLY CORRAL, and BETTY ANN BISACCA (collectively "Defendants") respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, The Filly Corral located in Pittsburgh, Pennsylvania ("Filly Corral" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Pennsylvania's statutory right of publicity, 42 Pa. Cons. Stat. § 8316; d) violation of the Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1-201-9.2; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant BRASS SADDLE, INC.is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at 700 Atlantic Avenue McKeesport Pennsylvania 15132.   On information and belief, during the relevant time period BRASS SADDLE, INC. operated The Filly Corral, which is located at 150 Motordrome Road West Newtown, Pennsylvania, 15479.

7.      According to publicly available records, defendant OLI-CAR, INC. .is a corporation formed under the laws of the state of Pennsylvania, with an official address at RR 1, Box 89B, Smithton, PA 15479.   On information and belief, during the relevant time period OLI-CAR, INC., owned and operated The Filly Corral, which is located at 150 Motordrome Road West Newtown, Pennsylvania, 15479.

8.      Venue is proper in the United States District Court for the Western District of Pennsylvania because Pittsburgh, Pennsylvania is Defendants' principal place of business.

9.      A significant portion of the alleged causes of action arose and accrued in Pittsburgh, Pennsylvania and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Pittsburgh, Pennsylvania.

## PARTIES

*Plaintiffs*

10.      Plaintiff Alana Souza (a/k/a Alana Campos) ("Campos") is a well-known professional model, and a resident of Los Angeles County, California.

11.      Plaintiff Cielo Jean Gibson (a/k/a CJ Gibson) ("Gibson") is a well-known professional model, and a resident of Hillsborough County, Florida.

12.      Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

3

**13.** Plaintiff Emily Sears ("Sears") is a well-known professional model, and a resident of Los Angeles County, California.

**14.** Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

**15.** Plaintiff Heather Rae Young ("Young") is a well-known professional model, and a resident of Los Angeles County, California.

**16.** Plaintiff Hillary Fisher Vinson (a/k/a Hillary Hepner) ("Hepner") is a well-known professional model, and a resident of New York County, New York.

**17.** Plaintiff Jessica Golden (a/k/a Jesse Golden) ("Golden") is a well-known professional model, and a resident of Los Angeles County, California.

**18.** Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester. England.

**19.** Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Los Angeles County, California.

**20.** Plaintiff Marketa Kazdova ("Kazdova") is a well-known professional model, and a resident of Los Angeles County, California.

**21.** Plaintiff Paola Canas ("Canas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

**22.** Plaintiff Tiffany Toth Gray (a/k/a Tiffany Toth) ("Toth") is a well-known professional model, and a resident of Orange County, California.

***Defendants***

**23.** According to publicly available records, defendant BRASS SADDLE, INC. is formed under the laws of the state of Pennsylvania.   On information and belief, during times

4

relevant to this action, BRASS SADDLE, INC. operated The Filly Corral in West Newtown, Pennsylvania.

**24.**      According to publicly available records, defendant OLI-CAR, INC. is a corporation formed under the laws of the state of Pennsylvania, with an official address at RR 1, Box 89B, Smithton, PA 15479.   On information and belief, during the relevant time period OLI-CAR, INC., owned and operated The Filly Corral, which is located at 150 Motordrome Road West Newtown, Pennsylvania, 15479.

**25.**      According to publicly available records, defendant BETTY ANN BISACCA is the principal, owner and/or CEO of BRASS SADDLE, INC., and upon information and belief in that role maintains operational control over The Filly Corral, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

**26.**      As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

**27.**      Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.   In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

**28.**      Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with The Filly Corral.

**29.**     In the case of every Plaintiff, such appearance was false.

**30.**     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

**31.**     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

### Plaintiffs' Backgrounds and Careers

**32.**     Campos is a Brazilian model who started working as a model when she was only fifteen years of age. Ms. Campos was scouted by the director of Ford Models, which became her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at twenty years of age, where she is still currently represented by Wilhelmina Models. Ms. Campos has been published in Playboy, Astonish Mag, Viva Glam, and Bliss Mag. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for Arizona Foothills Magazine. In addition, Ms. Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

**33.**     That we know of, Campos is depicted in the photos in Exhibit "A" to promote The Filly Corral on its website and Facebook page. These Images were intentionally altered to make it appear that Campos was either a stripper working at The Filly Corral, that she endorsed

the Club, or that she was otherwise associated or affiliated with the Club.

34.     Campos has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Gibson is an American model who enjoys great success in her industry. Ms. Gibson was the *Import Tuner* magazine Model Search winner. Ms. Gibson is currently a model for the Falken Drift Team, and can be seen at Formula Drift events. Ms. Gibson has also appeared in several magazines including *FHM*, *American Curves* (as a cover model), *Supreme*, *MuscleMag International, Muscle & Fitness, Teeze,* and in a Bowflex ad. Ms. Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Ms. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Ms. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

36.     That we know of, Gibson is depicted in the photo in Exhibit "B" to promote The Filly Corral on its Facebook page. This Image was intentionally altered to make it appear that Gibson was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

37.     Gibson has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Mitcheson competed for Miss Pennsylvania USA at age18 and placed in the top ten.  Ms. Mitcheson soon became the Face of Playboy intimates, and the following year she became the Face of MGM Grand Las Vegas and Miss Pennsylvania Intercontinental. Ms. Mitcheson was also named Maxim magazine's Hometown Hottie, in which thousands of girls across the United States enter the yearly contest. That same year, Ms. Mitcheson was #100 on Maxim's Hot 100 list. She has graced the pages of multiple issues of Maxim, including a three page spread, two center folds, and landed the cover for the May 2014 Navy issue. Ms. Mitcheson's career as a TV personality, actress, and spokeswoman is booming. Ms. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her services and increased her daily quote substantially. Ms. Mitcheson has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes and J. Valentine. Ms. Mitcheson was the face of an International video game.

39.     That we know of, Mitcheson is depicted in the photos in Exhibit "C" to promote The Filly Corral on its website and Facebook page. These Images were intentionally altered to make it appear that Mitcheson was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

40.     Mitcheson has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     Sears is, and at all times relevant to this action is an Australian model,

8

spokeswoman and social media phenom. As a social media influencer, she encourages

conversation via the content she creates. Emily shares body positive images with millions of

followers and supports others to have the confidence to seek out healthy relationships. Through

her efforts, she's witnessed a ripple effect of kindness and self- acceptance in her interactions

with others. Ms. Sears believes social media empowers women to represent themselves how they

want, as opposed to what industries may demand. These avenues have proven that every body

type is beautiful. As a curvy model, Emily has been able to redirect her career with the power of

social. People now control what is popular in the world, and she's humbled to have the

opportunity to influence others to direct their own paths. Ms. Sears has appeared in titles such as:

GQ USA, FHM, MAXIM, Kandy Magazine, Ralph, M, Transworld, Motocross, Esquire and

ZOO Weekly. Ms. Sears represented world-wide brands such as, Ciroc, Naven, Strike force

MMA, Kumo Tires, Comfort Revolution, Two in the shirt, Monster Energy and Man eater

Swimwear. Emily has also appeared in a variety of TVC and music video roles including

national campaigns and internationally renowned music artists worldwide. Ms. Sears has her

own commercial website http://www.emilysears.com/index.php Ms. Sears has a combined tally

of over 5 million Social Media Followers.

   42.   That we know of, Sears is depicted in the photos in Exhibit ″D″ to promote The

Filly Corral on its Facebook page. These Images were intentionally altered to make it appear that

Sears was either a stripper working at The Filly Corral that she endorsed the Club, or that she

was otherwise associated or affiliated with the Club.

   43.   Sears   has never been employed at The Filly Corral, has never been hired to

endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral,

has received no remuneration for Defendants' unauthorized use of her Image, and has suffered,

and will continue to suffer, damages as a result of same.

**44.**     Pepaj is also a successful model and actress who moved to Hollywood in 2004 to pursue her acting and modeling career. She is known for her roles in the movies: The Hand Off (2009), Interior, Leather Bar, (2013) and The Romp (2011). Eva was a feature in a national Diet Coke TV commercial. Eva is a professional model working model and actress and her work includes from runways to high fashion, to print and film.

**45.**     That we know of, Pepaj is depicted in the photos in Exhibit "E" to promote The Filly Corral on its website and Facebook page. These Images were intentionally altered to make it appear that Pepaj was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

**46.**     Pepaj has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

**47.**     Young was chosen to be the Playmate of the Month in the February 2010 issue of the famous men's magazine. In addition, Young has also worked as a swimsuit, glamor, and lingerie model: She's been a spokes model for Captain Morgan, Smirnoff, Baileys, and Jose Cuervo, posed for both the 2010 Import Tuner calendar and the 2011 Fast Dates calendar, was featured in an ad campaign for the Affliction Clothing Line, and has modeled for such clients as Calao Swimwear, DSO Eyewear, Carrie Amber lingerie, Hustler Lingerie, Superstar Swimwear, and 7 Til Midnight Lingerie. Young made a guest appearance as Tina in "The Baby" episode of the comedy TV series "Til Death". Young has 427,000 followers on Instagram, and 98,800 followers on Twitter.

48.     That we know of, Young is depicted in the photo in Exhibit "F" to promote The Filly Corral on its website. This Image was intentionally altered to make it appear that Young was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

49.     Young has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.     Hepner has been in Playboy several times, Ciroc Commercials, a Rascal Flatts Music Video and has modeled for Coquette Lingerie, American Curves, Rockstar Energy Drink Calendars and Ads, among many other companies.

51.     That we know of, Hepner is depicted in the photos in Exhibit "G" to promote The Filly Corral on its website and Facebook page. These Images were intentionally altered to make it appear that Hepner was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

52.     Hepner has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.     Golden is a successful model and businesswoman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like New York Times, Fitness, New Port Beach, Yoga International, and many others. Jesse shares her secrets on her own blog and

also writes for many other magazines and sites. She's currently becoming a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of commercials, television and film; Jesse continues to expand her career through life experiences.

54.     That we know of, Golden is depicted in the photo in Exhibit ″H″ to promote The Filly Corral on its Facebook page. This Image was intentionally altered to make it appear that Golden was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

55.     Golden has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56.     Pinder is an English model, actress, host, businesswoman and one of Great Britain's most famous glamour models. Ms. Pinder has featured in publications such as FHM, Nuts, Loaded and the Daily Star, and hundreds of others. Ms. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006 and 2007. Ms. Pinder was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of Nuts magazine cover. Ms. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) and others, and on large national and international advertising campaigns. Ms. Pinder has an established and developing acting career with many TV appearances and Film credits. Ms. Pinder has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Ms. Pinder was also a contestant on Celebrity Big Brother. Ms.

Pinder had starring roles in films such as The Seventeenth Kind, Age of Kill, and Warrior Savitri. Ms. Pinder works closely with a number of Wildlife charities and is involved in fundraising for 'Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue". Ms. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Ms. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Ms. Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram and Twitter.

57.     That we know of, Pinder is depicted in the photos in Exhibit "I" to promote The Filly Corral on its website and Facebook page. These Images were intentionally altered to make it appear that Pinder was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

58.     Pinder has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

59.     Davalos was born in the US but grew up in Colombia. Ms. Davalos has a twin sister Camilla and together started a modeling career at age 10. By the time Ms. Davalos was 18 her career was already established in Colombia as one of the most famous and successful models in all of Latin America. Ms. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas

Dulce, Para Hombre, Spiritual Jeans and Satori. Ms. Davalos is constantly listed in "The top sexiest people in the World" lists and whether solo or teamed up with her twin sister are constantly in demand. Ms. Davlos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her Instagram followers of over three hundred thousand and over a quarter of a million Facebook fans.

60.     That we know of, Davalos is depicted in the photos in Exhibit "J" to promote The Filly Corral on its website and Facebook page. These Images were intentionally altered to make it appear that Davalos was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

61.     Davalos has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

62.     Kazdova was first discovered in a family vacation and was offered her first contract at the age of fourteen. When she turned fifteen, her agents from Czech Republic started sending her all over Asia and Europe to work as a model. She has worked in places such as Hong Kong, Tokyo, Beijing, Shanghai, Ghuanghzou. As well as throughout Europe, such as Milan, London, Paris, Portugal, Germany, Austria, and Dubai. She has appeared in Elle, Style, Cosmo Girl, Dolce Vita, Nylon, Prestige Paris, Fiasco, Composure, Formen, Modern Salon, Viva Glam and other magazines. Since 2011, she has been working in New York/ L.A. and has worked with Nordstrom, Macy's, Tadashi Shoji, Anthony Franco, Alicia Estrada, Mirabella Beauty, MAC, Level 99, Dreamgirl Lingerie, Erka Mare Swimwear, HausofPinkLemonaid Swimwear, Hautelook, Patagonia, and many others.

63.     That we know of, Kazdova is depicted in the photos in Exhibit "K" to promote The Filly Corral on its website and Facebook page. These Images were intentionally altered to make it appear that Kazdova was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

64.     Kazdova has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

65.     Canas is a Colombian born model now residing and working in the United States. Ms. Canas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Ms. Canas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Ms. Canas was chosen as the face of the Masters Gold Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Ms. Canas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Ms. Canas has 482,738 Instagram followers and over 9,200 Facebook likes.

66.     That we know of, Canas is depicted in the photo in Exhibit "L" to promote The Filly Corral on its website. This Image was intentionally altered to make it appear that Canas was either a stripper working at The Filly Corral that she endorsed the Club, or that she was

otherwise associated or affiliated with the Club.

**67.** Canas has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

**68.** Selby has appeared in TV in shows such as The Girl's Next Door, Bikini Destinations, Poor Man's Bikini Beach (host), Last Comic Standing (model), Deal or No Deal (case model). She has done commercials for Guitar Hero 5 (with Hugh Hefner), Ab Lounge Informercial, and Reflections Boutique. Her modeling consists of Miss Cobra Seats (2010), Dreamgirl Lingerie Catalog (2009), Matco Tools Calendar (2009), Nom De Plum Lingerie Catalog (2008), Watercraft World Magazine (2008), SBT Spokesmodel (2007/08), Playboy Playmate (July 2007), Blue Tattoo Jeans (2008), Players Only . com, Hankook Tires, MHT Wheels, Spike TV . com, Elegant Moments Lingerie Catalog (2008), Quad Magazine (2007), Kat Man Du Poster, Georgia Peach Buns 2005 Calendar/Website, Star Magazine, Miss Hawaiian Tropic (St. Augustine, FL 2002), Miss Hawaiian Tropic (Jacksonville, FL 2004), Axis Magazine, Reflections Boutique, Xposed Magazine, DC Swimwear, Forplay Lingerie 2005 Catalog, Show Me/s Restaurant Billboard, PhatMuscle, RamTech 2005 Calendar, California Surfer Girls 2006 Calendar, Bang Vodka, Joe Rocket, Flirt Catalog, Benchwarmer Trading Cards, Makes & Models Magazine (2006), 2 Wheel Tuner Magazine, Boating Magazine – cover, MPH Magazine (Feb. 2006) Paradise Denim Catalog (2006). G Collections Lingerie Catalog (2006), and Echo Surf Posters. She's been a spokesmodel for Bang Vodka, V-Sept PowerSports, Thompson Pump, Miss Suzuki 2007, and Budweiser 2007. Her promotional work consists of Skoal Promotion, Stacker 2 Promotion, Hawaiian Tropic Promotion, and Guitar Center Grand Opening.

69.     That we know of, Selby is depicted in the photos in Exhibit "M" to promote The Filly Corral on its Facebook page. This Image was intentionally altered to make it appear that Selby was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

70.     Selby has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

71.     Sugden is, and at all times relevant to this action was, is an English glamor model, actress, host and spokeswoman who is one of Europe's most famous celebrities. Ms. Sugden has appeared in hundreds of magazines and is one of the most featured Page 3 girls of all time. Ms. Sugden was featured as a Page 3 girl as recently as December 2017. That made a tally for 2017 of five features. Ms. Sugden has been featured in a number of films and was a star competitor in Celebrity Big Brother. Ms. Sugden has an official subscription-based website and has marketed her own products including a calendar for many years. https://onlyfans.com/rhianmarie Ms. Sugden has been involved in a number of charities and is often a spokeswoman for the prevention of animal cruelty. Ms. Sugden has over 1 million Social Media Followers.

72.     That we know of, Sugden is depicted in the photo in Exhibit "N" to promote The Filly Corral on its Facebook page. This Image was intentionally altered to make it appear that Sugden was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

73.     Sugden has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral,

17

has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

74.     Toth is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Ms. Toth was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen, and Maxim, but has also posed for various catalogs. Ms. Toth has over 3,813,000 Facebook followers, over 1,300,000 Instagram followers, and over 253,000 Twitter followers.

75.     That we know of, Toth is depicted in the photos in Exhibit "O" to promote The Filly Corral on its website and Facebook page. These Images were intentionally altered to make it appear that Toth was either a stripper working at The Filly Corral that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

76.     Toth has never been employed at The Filly Corral, has never been hired to endorse The Filly Corral, has never been otherwise associated or affiliated with The Filly Corral, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

77.     Upon information and belief, Defendants operated, during the relevant time period, The Filly Corral, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

78.     Upon information and belief, and in furtherance of its promotion their promotion of The Filly Corral, Defendants own, operate and control The Filly Corral's social media

18

accounts, including its Facebook, Twitter, and Instagram accounts.

79.     Defendants used The Filly Corral' Facebook, Twitter, and Instagram accounts to promote The Filly Corral, and to attract patrons thereto.

80.     Defendants did this for their own commercial and financial benefit.

81.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at The Filly Corral, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

82.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed The Filly Corral to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

83.     As Defendants were at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by The Filly Corral and at no point have any of the Plaintiffs ever endorsed The Filly Corral, or otherwise been affiliated or associated with The Filly Corral.

84.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

85.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

86.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

87.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.   Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Misappropriation of Plaintiffs' Images*

88.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote The Filly Corral by and through various marketing and promotional mediums including, without limitation, The Filly Corral website, Twitter, Facebook, and Instagram.

89.     Defendants showcased Plaintiffs' Images on The Filly Corral's social media pages to create the false impression that Plaintiffs worked at The Filly Corral, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

90.     Defendants did so to attract clientele to The Filly Corral, promote The Filly Corral, and thereby generate revenue for Defendants.

91.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed The Filly Corral.

92.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

93.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

94.     This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

95.     At no point were any of the Plaintiffs ever affiliated with The Filly Corral, or Defendants.

96.     Each of Plaintiffs' Images was used without her consent.

97.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

98.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

99.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including The Filly Corral website, Twitter, Facebook, or Instagram accounts.

100.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

101.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**<u>FIRST CAUSE OF ACTION</u>**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

100.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

101.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

102.    As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at The Filly Corral, or agreed to appear in The Filly Corral's advertisements.

103.    Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

104.    Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended The Filly Corral.

105.    Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

106.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

107.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

108.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

109.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an

amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)**

110. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

111. The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

112. Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with The Filly Corral, or worked at, sponsored, or approved of The Filly Corral's goods, services or commercial activities.

113. This was done to promote and attract clientele to The Filly Corral, and thereby generate revenue for the Defendants.

114. Thus, this was done in furtherance of Defendants' commercial benefit.

115. Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with The Filly Corral, nor worked at, sponsored, or approved of The Filly Corral's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with The Filly Corral.

116. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

117. Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and

23

the goods and services provided by the Club.

118.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Right of Privacy)

119.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

120.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Pennsylvania law.

121.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

122.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on The Filly Corral's website or related social media accounts as part of Defendants' advertising campaign.

123.     At all relevant times, the Filly Corral's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

124.     The Filly Corral's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

125.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

24

126.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

127.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

128.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for The Filly Corral.

129.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

130.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

131.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

132.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

### FOURTH CAUSE OF ACTION
### (Right of Publicity, Unauthorized Use of Name or Likeness: 42 Pa. Cons. Stat. § 8316)

133.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

134.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

135.     Said commercial interest was developed by each Plaintiff through her investment

of time, effort and money in her career, image, persona and likeness.

136.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in their advertising.

137.    Defendants did so without any Plaintiff's consent, written or otherwise.

138.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

139.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

140.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

141.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

142.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Common Law Right of Publicity)**

143.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

144.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

26

145.     Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

146.     As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in their advertising.

147.     Defendants did so without any Plaintiff's consent, written or otherwise.

148.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

149.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

150.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

151.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

152.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

153.     In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Defamation)

154.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.     As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

156.     Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

157.     None of these representations were true.

158.     In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club, or endorsed the Club.

159.     Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

160.     In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

161.     Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

162.     Defendants' publication of Plaintiffs' Images constitutes defamation under

Pennsylvania law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

163.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Pennsylvania law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

164.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

165.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Pennsylvania law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

166.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

154.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of

intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

156.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

157.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

158.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

159.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

160.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.   Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

161.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false,

misleading and/or deceptive manner.

162.     As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

163.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

164.     Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

165.     By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

166.     As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

167.     Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

168.     As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

169.     Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

170.     Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

171.     Upon information and belief, Defendants did in fact benefit commercially due to

their unauthorized use of Plaintiffs' Images.

172.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

173.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

174.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

175.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

176.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

177.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

178.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

179.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c)  For punitive damages, in an amount to be determined at trial, due to Defendants' misappropriation of Plaintiffs' property and publicity rights;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117; and,

(e)  For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

s/Louis J. Kroeck
Louis J. Kroeck
**PA ID No. 210045**
**Lou@Ljk-law.com**
12th Floor, Park Building
355 Fifth Avenue
Pittsburgh, PA 15222
   412-712-7605

&

_/s John Golaszewski_____
John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@casaslawfirm.com
*Admitted Pro Hac Vice*

34